KENNETH FRITCHLEY, APPELLANT, V. LOVE-COURSON
DRILLING CO., INC., ET AL., APPELLEES.

129 N. W. 2d 515

Filed June 26, 1964. No. 35696.

Clinton & McNish, for appellant.

Martin, Davis, Mattoon & Matzke, for appellee Love-Courson Drilling Co., Inc.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an action for damages brought by Kenneth Fritchley as plaintiff against Love-Courson Drilling Co., Inc., and The Employers' Liability Assurance Corporation, Ltd. For convenience, Love-Courson Drilling Co., Inc., will be referred to as the defendant. The Employers' Liability Assurance Corporation, Ltd., was the workmen's compensation insurance carrier of the plaintiff's employer and was made a party defendant because of its right of subrogation.

The plaintiff was injured on March 11, 1960, when he fell from a ladder on a water tank owned by defendant. The specific negligence alleged in the petition was the furnishing of a defective ladder. The answer denied negligence generally and alleged assumption of risk

and contributory negligence. At the close of the evidence the trial court sustained a motion to dismiss the action upon the ground of assumption of risk. The plaintiff's motion for new trial was overruled and he has appealed.

The assignments of error relate to the sustaining of the defendant's motion to dismiss. The question presented is whether the evidence was sufficient to create a question for the jury. In determining this question the evidence must be considered most favorably to the plaintiff, every controverted fact must be resolved in his favor, and he is entitled to the benefit of every inference that can reasonably be drawn from the evidence. Crusinberry v. Merryman, 176 Neb. 479, 126 N. W. 2d 481.

The record shows that on March 11, 1960, the plaintiff was employed as a truck driver by Earl S. Martin Water Service. The defendant was then drilling an oil well at a location near Lorenzo, Nebraska, and Martin was supplying the water which the defendant was using at that location. Martin asked the plaintiff to go to the location near Lorenzo, Nebraska, and check the water in the defendant's tank.

There was no gauge on the tank at this time and the only way to determine the water level in the tank was to climb up the side of the tank and look down into it. There was a ladder on the side of the tank which had been constructed by welding bars to the side of the tank and to a 4-inch or 4½-inch pipe which was fastened to the tank. The pipe was a part of a frame or "skid" that was attached to the side of the tank.

There were seven bars which formed the rungs of the ladder. They were approximately 13 inches long and were spaced approximately 18 inches to 20 inches apart. The bars were cut from ¾-inch sucker rod and were solid. The left end of each bar was welded to the side of the tank. The right end of each bar was welded to the pipe. The space between each bar and the side of the tank varied from zero to about 3 inches. Several

of the bars had been bent and the top rung had broken loose from the pipe.

The plaintiff had serviced this tank before and he had climbed the ladder three, four or five times. The plaintiff testified that on March 11, 1960, the ladder was in the same condition that it was the first time that he had climbed it, and that he considered it to be a dangerous ladder.

The plaintiff arrived at the well location sometime after 4 o'clock p.m. He parked his car about 200 feet from the drilling rig. He then walked through mud to the tank and climbed the ladder. After the plaintiff had climbed to the top of the tank he fell to the ground and was severely injured.

The evidence does not show what caused the plaintiff to fall from the ladder. The plaintiff said that his foot was on "a very treacherous rung," the third or fourth, and that as he grasped the top rung it "sprung out" and he lost his balance and fell backward. However, the plaintiff admitted that he did not know what caused him to fall. On cross-examination the plaintiff testified as follows: "Q Now, isn't it a fact, Mr. Fritchley, that the reason that you fell off this tank was because your muddy foot, or feet, slipped off the rungs? A That, I cannot answer. As I have stated, and I still think, what caused me to fall was this rung sprung out. That is still my feeling. * * * Q Now Mr. Fritchley, how far did this top rung spring out? A That, I cannot answer, because if you are in a position that I was in, one-tenth of an inch would seem like a foot—try it. * * * Q Well, where you have got your one hand on the rung, it sprung out, and you grab it with the other hand, did you just let go, then? A That is what—I don't know what happened. I was on a very treacherous rung with my foot."

The evidence was sufficient to sustain a finding that the ladder from which the plaintiff fell was defective. At best, the ladder was a makeshift. The defendant had

allowed the ladder to become bent and broken so that it was in a defective and dangerous condition at the time the plaintiff was injured.

. The evidence also shows that at the time the accident happened the plaintiff was 41 years of age. He had then had over 5 years experience in furnishing water service to oil well drillers which included climbing tanks to inspect water levels.

The plaintiff first saw the defendant's water tank in 1959. At that time the top rung of the ladder was broken loose from the pipe and the plaintiff considered the ladder to be dangerous. The plaintiff had climbed this ladder between three and five times before the accident happened. On the day that the accident happened, the ladder, including the top rung, was in the same condition that it was in when the plaintiff first saw it. The condition of the ladder was visible and could be seen from the ground.

The plaintiff did not inspect the ladder before climbing it and he did not have the broken rung in mind when he started to climb. The plaintiff was wearing overshoes which were muddy and he did not remove them before attempting to climb the ladder.

One who is capable of understanding and discretion and who fails to exercise ordinary care and prudence to avoid defects and dangers which are open and obvious is negligent or contributorily negligent. One who knows of a dangerous condition, appreciates its dangerous nature, and deliberately exposes himself to the danger assumes the risk of injury from it. Wertz v. Lincoln Liberty Life Ins. Co., 152 Neb. 451, 41 N. W. 2d 740, 17 A. L. R. 2d 629; Lownes v. Furman, 161 Neb. 57, 71 N. W. 2d 661; Anderson v. Evans, 164 Neb. 599, 83 N. W. 2d 59; Gamble v. Gamble, 171 Neb. 826. 108 N. W. 2d 92; Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041.

The testimony of the plaintiff in this case shows both assumption of risk and contributory negligence on his

part sufficient to bar his recovery as a matter of law. The plaintiff who knew and comprehended the dangerous condition of the ladder deliberately exposed himself to the danger and failed to take reasonable precaution to prevent injury.

The judgment of the district court is correct and it is affirmed.

AFFIRMED.