JOHN R. GRAHAM, APPELLEE, v. SIMPLEX MOTOR REBUILDERS, INC., A CORPORATION, APPELLANT, IMPLEADED WITH TAKIN BROTHERS FREIGHT LINE, INC., A CORPORATION, APPELLEE.

203 N. W. 2d 494

Filed January 19, 1973. No. 38309.

Theodore J. Stouffer and Michael F. Kinney of Cassem, Tierney, Adams & Henatsch, for appellant.

Alfred A. Fiedler of Weinberg & Fiedler, for appellee Graham.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

This is a negligence action in which the plaintiff sus-

tained injuries as a result of a fall which occurred while he was working on the defendant's loading dock as an employee of a third party. The district court entered judgment on a jury verdict for the plaintiff in the sum of $4,500. We reverse the judgment of the district court and remand the cause for a new trial because of error in the instructions.

Plaintiff, John R. Graham, was a truck driver employed by Takin Brothers Freight Line in Omaha, Nebraska. His duties in that capacity embraced the picking up and delivering of freight, including loading and unloading, at various points around the City of Omaha.

The evidence shows that on January 16, 1968, the plaintiff was driving a 20-foot pickup truck for his employer when he was dispatched to the defendant's shop for the purpose of picking up a rebuilt engine. Upon arrival, plaintiff backed the truck up to the west end of the defendant's loading dock. The evidence shows that this dock is approximately 20 feet long and about 4 feet wide with the length running from east to west, and it is roughly 2 feet lower than the bed of the truck the plaintiff was driving at the time. On this particular day the dock was covered with ice, snow, and slush, and no sand or gravel appeared to have been spread for the protection of workers who were concededly invited to use the dock in connection with the prosecution of the defendant's business. In addition, several trash barrels had been placed on the dock.

It is clear that the defendant maintained a steel plate on the dock for use by truckers to bridge the gap between their truck beds and the surface of the dock in loading. This plate was about 2 feet wide and 4 feet long and weighed about 60 pounds. The plaintiff was familiar with the plate, and had used it several times before. It was necessary for him to use it in the loading operation and he testified, without dispute, that he would not have picked up the engine nor attempted to load it had the plate not been there for his use in

putting it on the truck. The plaintiff drove his truck to the dock, stopped it, got out, walked around the front end, and climbed up on the loading dock. He went over to the steel plate and bent down to pick it up. The plate was wet and had ice and slush on it, but the plaintiff testified that it looked loose to him. The fact was that the plate was stuck in the ice and would not give, and the plaintiff's feet slipped in the slush and ice when he exerted himself in the attempt to pick it up, thinking it was loose, when in fact it was frozen stuck. He fell backward toward the south and struck his head, back, and neck on the corner of the defendant's building before falling to the floor of the dock. As a result of the fall the plaintiff sustained the injuries for which this suit was brought. The trial court, in its instructions, submitted to the jury the issue of trash barrels on the loading dock. In the plaintiff's petition it was alleged: "In placing trash barrels and large drums on said loading dock leaving only a small dangerous surface for Plaintiff to walk on while attempting to unload his truck." It was clearly error to submit this alleged act of negligence. The record is bare of any evidence that the placement of these trash barrels or drums had any causal connection with the accident whatsoever. The accident occurred in the small space immediately present and surrounding the location of the steel plate, as we have previously set forth in the facts. There is no evidence, either directly or by inference, that the trash barrels had anything at all to do with either the plaintiff's actions or the discovery and location of the steel plate. Nor is there any evidence that the narrowing of the space on the dock from the placement of the trash barrels or any impediment to the plaintiff's movement around the dock either proximately caused or contributed to the accident. It is prejudicial error within the meaning of the comparative negligence statute to submit to the jury issues that are irrelevant and for which there is no proof. Allen

v. Clark, 148 Neb. 627, 28 N. W. 2d 439; McKinney v. County of Cass, 180 Neb. 685, 144 N. W. 2d 416.

The district court also submitted to the jury the issue, alleged in the plaintiff's petition, concerning the height of the dock. The plaintiff alleged that the defendant was negligent, "In failing to construct said loading dock of a sufficient height that it would be flush with the bottom of a truck." Again, there is no evidence in the record, or any reasonable inference, that the construction of the dock at a different level than the truck was the proximate cause of the accident. The erection or maintenance of a loading dock which is not of sufficient height to be flush with the bottom of a particular truck is not negligence in or of itself. We state the obvious when we observe that such a condition is obvious and a necessary function of the loading dock operation. The very purpose of the steel plate was to make the necessary adjustment to correlate with the varying height of the truck bottoms in the ordinary course of the defendant's business. It is neither alleged nor suggested that the furnishing and contemplated use of the steel plate to adjust the difference in height was in any sense negligence of and by itself. No authority is cited that would sustain such an allegation of negligence as being the proximate cause of an accident such as occurred in this case. To place such a requirement on the defendant in the ordinary course of business here would be tantamount to making him an insurer of the plaintiff's safety and would constitute an unreasonable and burdensome imposition by an inviter owner. We have quite recently rejected the same contention with reference to claimed negligence in maintaining different levels and approaches of places of business. The rule is well established that it is not negligence to maintain, under appropriate circumstances, different levels and approaches to places of business. Gorman v. World Publishing Co., 178 Neb. 838, 135 N. W. 2d 868. See, also, Lund v. Mangelson, 183 Neb. 99,

158 N. W. 2d 223. It was the defendant's duty to the plaintiff to maintain the dock in a reasonably safe condition. But the defendant was not an insurer of the safety of the plaintiff. The inviter did furnish the steel plate for the purpose of facilitating loading and unloading of merchandise at the dock. The plaintiff was familiar with the operation, had been to this dock before, and was experienced in lifting and using the steel plate. From the particular facts present in this case, it must be said as a matter of law that the defendant's action in maintaining a loading dock at a different level from the truck bed was not negligence and it was error for the court to permit the jury to so find.

In another instruction the district court permitted the jury to find for the plaintiff if it found that the defendant was negligent "in otherwise failing to observe that care and caution required of reasonable, prudent persons under the circumstances." The giving of this general instruction permitted the jury to speculate and set up its own standards of duty on the part of the defendant and permitted it to find, if it did, that the defendant was negligent in permitting merely the existence of a dock with ice, snow, and slush on it. It is undisputed that the plaintiff was fully aware of the ice, snow, and slushy condition on the dock, and the defendant was under no duty to alert the plaintiff to any alleged dangerous condition of the actual accumulation of snow and ice which was open and obvious to him. Crawford v. Soennichsen, 175 Neb. 87, 120 N. W. 2d 578; Nance v. Ames Plaza, Inc., 177 Neb. 88, 128 N. W. 2d 564. It is error to submit a general allegation of negligence to the jury. In point is the instruction contained in the case of Raile v. Toews, 165 Neb. 184, 84 N. W. 2d 199. In that case the court submitted to the jury the following instruction: "* * * to exercise every reasonable precaution for their safety, and to exercise ordinary care in providing sufficient light at

night so that workmen could see dangerous moving objects, in warning them of danger, and in avoiding an accident, if possible, as should a person of ordinary prudence under like circumstances." Such an instruction, as we have pointed out, allowed a jury to speculate as to any precaution which might occur to it as a reasonable one which the defendant did not exercise. It is obviously prejudicial because it does not limit the jury to consider only those reasonable precautions that were within the issues of negligence presented. We have stated that this type of pleading and instruction has been condemned by this court on many occasions. The enumeration of specific acts of negligence should state the ultimate acts of negligence and not the conclusion of the pleader. See, Ripp v. Riesland, 176 Neb. 233, 125 N. W. 2d 699; McClelland v. Interstate Transit Lines, 139 Neb. 146, 296 N. W. 757; Marquardt v. Nehawka Farmers Coop. Co., 186 Neb. 494, 184 N. W. 2d 617.

The defendant contends that it was entitled to a directed verdict because the plaintiff was guilty of contributory negligence as a matter of law and should be found to have assumed the risk of the accident as a matter of law. We disagree. The defendant has ably and succinctly set out the applicable law in the State of Nebraska with reference to contributory negligence and the doctrine of assumption of risk in cases of this nature. However, and without repeating these authorities, they are not applicable to the facts in this case. The plaintiff's testimony is as follows:

"Q. Now what position were you in when you went to pick up this steel plate?

"A. I had bent over to pick it up. It looked loose when I bent to pick it up. My feet slipped under the plate and I fell upon my back.

"Q. How did this plate appear?

"A. It looked loose.

"Q. And what end of the plate did you try to pick up?

"A. The one closest to the truck.
"Q. When you started to lift it what did you find?
"A. It was wet and I just all of a sudden slipped.
"Q. Was the plate stuck in the ice?
"A. Yes, it wouldn't come up or give.
"Q. And what did you do when it wouldn't give?
"A. I fell down.
"Q. Could you see that it was stuck?
"A. No, sir.
"Q. Was it apparent to you that it was stuck?
"A. No, sir.
"Q. Was it laying right on the dock?
"A. Yes, sir."

For our purposes we must assume the truth of this testimony. Flanagin v. DePriest, 182 Neb. 776, 157 N. W. 2d 389; Taylor v. J. M. McDonald Co., 156 Neb. 437, 56 N. W. 2d 610. The defendant's argument is predicated on the proposition that the condition of the steel plate and the ice and snow was open and obvious and that, therefore, the defendant, in maintaining the loading dock, owed plaintiff no duty. This is obviously not the fact we have presented in this case. The defendant did have, as the defendant concedes, a duty to furnish a reasonably safe place for the invitee-plaintiff to work on in the performance of his business. The plaintiff did not know that the steel plate was stuck in the ice and thus required an extra heavy amount of exertion to loosen it and to put it in place on his truck. The question of whether he knew, or should have known, of this condition at the time he attempted to lift the steel plate was clearly a question for the jury. The jury could find that the plaintiff reasonably concluded the steel plate was loose and not affected by the ice and snow and, therefore, it could be lifted safely as it had been in the past into the proper loading position. It could reasonably find that there was no knowledge of an open and obvious danger and that, therefore, the plaintiff could not be guilty of assumption of a risk

under the circumstances. We come to the conclusion that the questions of negligence, contributory negligence, and assumption of risk were for the jury.

The defendant further contends that there was insufficient evidence of future pain and suffering and further disability to go to the jury. We do not deem it necessary to recite the detailed evidence in this respect. We have examined it, and it is clear that there was sufficient evidence on these elements to make a jury question.

For the reasons stated above, the judgment is reversed and the cause remanded to the district court for a new trial.

REVERSED AND REMANDED WITH DIRECTIONS.